

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*147 Pierrepont Street*
*Brooklyn, New York 11201*

April 27, 2005

Ephraim Savitt, Esq.
260 Madison Avenue, 22nd Floor
New York, New York, 100016

Kelley J. Sharkey
Capital Defender Office
217 Broadway
New York, NY 10003

Anthony L. Ricco
20 Vesey Street Suite 400
New York, NY 10007

Stuart David Rubin
26 Court Street
Suite 2506
Brooklyn, NY 11242

Stuart J. Grossman
Grossman & Rinaldo
108-18 Queens Boulevard
Forest Hills, NY 11375

Javier A. Solano
The Empire State Building
350 Fifth Avenue
Suite 6110
New York, NY 10118

                Re:  United States v. Ronell Wilson et. al.,
                   <u>Criminal Docket No. 04-CR-1016 (NGG)</u>

Dear Counsel:

      Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the government hereby furnishes the following discovery

2

with respect to the above-captioned case.  Additional discovery will be provided to you as it becomes available.  The government hereby also renews its initial request for reciprocal discovery.

A.   THE DEFENDANT'S STATEMENTS

Ronell Wilson

Defendant Wilson was arrested on March 12, 2003.  After his arrest, he made statements to police as detailed in a report attached as Government Exhibit 1.

On May 2, 2003, defendant Wilson was arrested for gun possession.  Wilson waived his Miranda rights and provided a statement to NYPD detectives.  The defendant stated in sum and substance: "Pudge picked up me, my cousin Chilli, and another guy in the harbor right before the police stopped us. Pudge was driving the truck and when the police stopped us, he ran out of the truck. I guess the gun was already in the truck because me and my cousin didn't have one before."  Enclosed as Government Exhibit 2 please find the Miranda waiver form signed by the defendant.  Wilson also provided pedigree information, stating that his name was Earl Wilson, his date of birth was May 6, 1982 and that he had lived at 77 Hill Street, apartment 1D in Staten Island, New York for the past 19 years.

Attached as Government Exhibit 3 is pedigree information provided by defendant Wilson at the time of his federal arrest.

Michael Whitten

Defendant Whiten was arrested in the vicinity of 800 Victory Boulevard, Staten Island, New York, in possession of a sum of crack cocaine on September 4, 2002. After his arrest, the defendant spontaneously stated in substance to the arresting officers, "I did it to pay for school."  Whiten also provided pedigree information stating that he lived at 152 Benziger Street in Staten Island, New York, that his date of birth was October 23, 1985 and that his social security number was 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.

3

Defendant Whiten was arrested the vicinity of Wright and Canal Street, Staten Island, New York, in possession of a sum of crack cocaine and crack cocaine packaging materials on September 11, 2002. Whiten provided pedigree information stating that he lived at 152 Benziger Street in Staten Island, New York and that his date of birth was October 23, 1983.

Attached as Government Exhibit 4 are minutes of two guilty pleas entered by defendant Whiten on October 11, 2002. At the time of his guilty pleas, the defendant Whiten entered into a

plea contract, a copy of which is attached as Government Exhibit 5.

On March 11, 2003, after being read and waiving his <u>Miranda</u> rights, defendant Whiten was interviewed by police. Reports summarizing statements made by defendant Whiten on that date are attached as Government Exhibits 6 and 7. Attached as Government Exhibit 8 is a copy of the <u>Miranda</u> rights form signed by the defendant Whiten on that date.

On April 10, 2003, defendant Whiten was fingerprinted and provided pedigree information including a date of birth of October 23, 1985, an address of 152 Benziger Avenue, Staten Island, New York. Defendant Whiten stated that his height was 5'8" and his weight was 140 pounds.

Attached as Government Exhibit 9 and 10 are pedigree information provided by defendant Whiten at the time of his federal arrest.

<u>Jamal Brown</u>

On April 1, 2001, defendant Brown was arrested for robbery and stated in substance, "I didn't do a robbery."

On April 4, 2003, defendant Brown was interviewed by detectives. A report summarizing that interview is attached as Government Exhibit 11.

Attached as Government Exhibit 12 is a <u>Miranda</u> waiver form signed by defendant Brown on September 24, 2002. Attached as

4

Government Exhibit 13 is a statement given by defendant Brown on September 24, 2002.

Attached as Government Exhibit 14 is a report summarizing statements made by defendant Brown on August 18, 2004.

Attached as Government Exhibit 15 is a report summarizing statements made by defendant Brown at the time of his arrest on November 21, 2004.

Attached as Government Exhibit 16 is pedigree information provided by defendant Brown at the time of his federal arrest.

### Angel Rodriguez

On August 18, 2002, defendant Rodriguez was arrested in possession of a defaced firearm. At the time of his arrest, the defendant Rodriguez did state in substance, "It's my gun."

Attached as Government Exhibit 18 is a report summarizing statements made by defendant Rodriguez on October 5, 2004.

### Paris Bullock

After being arrested on narcotics charges in Manhattan on August 24, 2001, defendant Bullock stated in substance, "That ain't mine. I didn't put that over there."

On March 12, 2003, defendant Bullock was arrested and while in a police vehicle repeatedly stated in substance that he was not the person who shot the cops and that his boys set him up. Later, defendant Bullock was read his *Miranda* rights and interviewed at the 120th Precinct. A copy of the Miranda rights form signed by the defendant is attached as Government Exhibit 19. Subsequently, defendant Bullock made statements to detectives which are summarized in Government Exhibits 20, 21 and 22.

On March 13, 2003, while in police custody, requested an ambulance stating that he had asthma. After being treated by EMS

5

personnel, defendant Bullock stated in substance that he did not need to go to the hospital and that he wished to lie down and would inform police if he needed additional assistance.

Attached as Government Exhibit 23 is pedigree information provided by defendant Bullock at the time of his federal arrest.

B.     THE DEFENDANTS' CRIMINAL RECORDS

Enclosed as Government Exhibits 24, 25, 26, 27 and 28 please find a copy of each of the defendants' criminal history reports.

C.     IDENTIFICATION PROCEDURES

At the time of their arrest on narcotics charges in Manhattan on August 24, 2001, a confirmatory identification of defendants Bullock and Whiten was made by a plainclothes police officer who had observed them engage in a narcotics transaction immediately prior to their arrest.

On March 11, 2003 a witness identified the defendant Whiten from a photo array. A copy of the array is attached as Government Exhibit 29.

On March 12, 2003, a witness identified defendant Bullock from a photo. A redacted copy of the photo is attached as Government Exhibit 30. On April 19, 2003, the same witness viewed a photo array and again identified defendant Bullock. A copy of the photo array shown is attached as Government Exhibit 31.

On April 27, 2003, a witness identified defendant Wilson from a photo array. A redacted copy of the photo array is attached as Government Exhibit 32.

On May 23, 2003, a witness identified defendant Whiten from a photo array. A redacted copy of the array is attached as Government Exhibit 33. On May 23, 2003, a second witness identified defendant Whiten from a photo array. A redacted copy of the array

6

is attached as Government Exhibit 34.

On March 11, 2003, a cooperating witness identified defendant Wilson from an array of individuals on an N.Y.P.D computer screen. A polaroid photo of the computer screen was taken and a copy is attached as Government Exhibit 35A as well as a redacted copy of Wilson's photo on the computer screen, which is attached as Government Exhibit 35B.

On March 30, 2001, a witness identified defendant Brown's photo, a copy of which is attached as Government Exhibit 36, from a series of individuals in the N.Y.P.D.'s P.I.M.S. computer system. On March 31, 2001, a second witness identified defendant Brown's photo from the same N.Y.P.D. P.I.M.S. computer system. On April 2, 2001, both these witnesses identified defendant Brown in a line-up. A photograph of the line-up is attached as Government Exhibit 37.

On September 24, 2002, a witness identified defendant Brown from a photo array. A redacted copy of the photo array is attached as Government Exhibit 38.

D.   TANGIBLE EVIDENCE

The government is in possession of tangible evidence that it will seek to introduce at trial. Evidence seized from Enterprise members and associates, includes but is not limited to the following:

- a defaced .380 caliber firearm and ammunition recovered from defendant Rodriguez on August 18, 2002
- 40 bags of crack cocaine recovered from defendant Whiten on September 4, 2002
- 19 bags of crack cocaine recovered from defendant Whiten on September 11, 2002
- Cigarette butt from Ronell Wilson on March 12, 2003

7

- a silver and blue Motorola cell phone, a gold and silver Nokia cell phone recovered from Ronell Wilson upon his arrest on March 12, 2003

- a white metal key recovered from Ronell Wilson upon his arrest on March 12, 2003

- Six metal keys recovered from Ronell Wilson upon his arrest on March 12, 2003

- Lyrics to a rap song recovered from Ronell Wilson upon his arrest on March 1, 2003 (copy attached as Government Exhibit 39W)

- miscellaneous papers and personal property in the possession of defendant Bullock when he was transported from state custody to federal custody (copies attached as Government Exhibit 39A-39V)

- evidence seized from Jamal Brown on November 23, 2004: ATF agents executed a search warrant On November 23, 2004, at the home of Jamal Brown, located at 45 Seaver Avenue in Staten Island, New York. Although previously disclosed, we have put a copy of the search warrant affidavit on the CD as Government Exhibit 40. Pursuant to the warrant, agents seized hundreds of photographs depicting Enterprise members, lyrics chronicling events involving the Enterprise, as well as letters from Enterprise members regarding Enterprise affairs. We have enclosed a select number of the documents seized which are labeled SW-1 though SW-91 on CD, which were previously provided. The remainder of the items seized may be viewed by counsel at a mutually convenient time.

- crack cocaine seized from Enterprise member Paris Bullock while he was with Michael Whiten on August 24, 2001

8

In addition, the government is possession of:

- the .357 caliber Colt Revolver sold by Enterprise members to Detective Nemorin on March 3, 2003

- a photocopy of the currency used by Detective Nemorin to purchase the .357 Colt Revolver on March 3, 2003

- photographs of enterprise members together provided to the government from associates and/or friends of enterprise members which can be examined by counsel at a mutually convenient time

Additional tangible evidence obtained from the New York City Police Department is being inventoried and will be disclosed to you shortly.

E.  REPORTS OF EXAMINATIONS AND TESTS

On the enclosed CD please find copies of the following reports

- a lab report regarding narcotics recovered from defendants Michael Whiten and Paris Bullock on August 24, 2001 (Government Exhibit 41).

- a lab report regarding narcotics recovered from defendant Michael Whiten on September 4, 2002 (Government Exhibit 42)

- a lab report regarding narcotics recovered from defendant Michael Whiten on September 11, 2002 (Government Exhibit 43)

- a ballistic report regarding a firearm recovered from defendant Wilson on May 2, 2002 (Government Exhibit 44)

- a ballistic report regarding a firearm recovered from defendant Rodriguez on August 18, 2002 (Government Exhibit 45)

9

        The government will provide copies of additional reports of any narcotics analysis and fingerprint analysis reports as well as other examinations and tests conducted with respect to this case as they become available.

        In addition, we will reproduce forensic/DNA analysis reports related to the murders of Detectives Nemorin and Andrews shortly.

F.    EXPERT TESTIMONY

        The government intends to call several experts to testify at trial, including but not limited to a medical examiner as an expert in forensic pathology to testify about the homicides of Detective Andrews and Detective Nemorin and absent a stipulation the government will call a chemist to testify at trial regarding the drugs which will be offered at trial. The government also expects to call an expert in forensic DNA analysis and a handwriting expert.

        The government will comply with Rule 16(a)(1)(E) by notifying you in a timely fashion of the identity of these experts and any additional experts that the government intends to call at trial. At that time, the government will also provide a summary of the opinion and qualifications of those experts.

G.    OTHER MATERIALS

        The government is aware of and will comply with its obligation to produce any other exculpatory information or material within the scope of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

        The government will furnish you before trial with information or material regarding payments, promises or immunity, leniency, or preferential treatment, if any, made to prospective witnesses within the scope of Giglio v. United States, 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959).

        The government will also furnish before trial materials discoverable pursuant to Title 18, United States Code, Section 3500.

10

H.   <u>RECIPROCAL DISCOVERY</u>

<u>The Defendant's Required Disclosure</u>

The government hereby asserts its right to reciprocal discovery under Rule 16(b) of the Federal Rules of Criminal Procedure. The government requests that the defendant allow inspection and copying of (1) any books, papers, documents, photographs, tapes, tangible objects, or copies or portions thereof, which are in the defendant's possession, custody, or control, and that the defendant intends to introduce as evidence or otherwise rely on at trial, and (2) any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, which are in the defendant's possession, custody, or control, and that the defendant intends to introduce as evidence or otherwise rely on at trial or that were prepared by a witness whom the defendant intends to call at trial.

The government also requests that the defendant disclose at least forty-eight hours prior to the testimony, prior statements of witnesses who will be called by the defendant to testify, pursuant to Fed. R. Crim. P. 26.2.

The government also requests that the defendant disclose a written summary of testimony the defendant intends to use as evidence at trial under Rules 702, 703 and 705 of the Federal Rules of Evidence. The summary should describe the opinions of the witnesses, the bases and reasons for those opinions, and the witnesses' qualifications.

Pursuant to Fed. R. Crim. P. 12.3, the government hereby demands written notice of the defendant's intention, if any, to claim a defense of actual or believed exercise of public authority, and also demands the names and addresses of witnesses upon whom the defendant intends to rely in establishing the defense identified in any such notice.

Pursuant to Fed. R. Crim. P. 12.2(a) and 12.2(b), the government hereby demands written notice of the defendant's intention, if any, to offer evidence: a) a defense of insanity; or

11

b) expert evidence relating to a mental disease, defect or condition in either the guilt of penalty phase of the trial, including the names and addresses of witnesses upon whom the

defendant intends to rely in establishing the defense identified in any such notice.

      Pursuant to Fed. R. Crim. P. 12.1(a), the government hereby demands written notice, to be served within ten days of this demand, if the defendant intends to offer a defense of alibi. The written notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offenses, and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi. The offenses took place at the location, dates, and times specified in the Indictment.

      If you have any questions or further requests, please do not hesitate to contact us.

      Very truly yours,

      ROSLYNN R. MAUSKOPF  
      United States Attorney

By: _____  
    Colleen Kavanagh  
    Jack Smith  
    Assistant U.S. Attorney  
    (718) 254-6556/6421

Encl.  
cc:  Court Clerk (NGG) (w/o enclosures)(ecf)