UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA,

                                                  **MEMORANDUM & ORDER**
        v.                                           04-CR-1016 (NGG)

RONELL WILSON,

        Defendant.
----------------------------------------------------X
GARAUFIS, District Judge.

       The Government alleges that Ronell Wilson ("Wilson" or "Defendant") murdered undercover New York Police Department ("NYPD") Detectives Rodney Andrews ("Detective Andrews") and James Nemorin ("Detective Nemorin") on March 10, 2003. Based on these and other allegations, Wilson is charged with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (See Second Superseding Indictment, Docket Entry No. 179.) The Government is seeking the death penalty against Wilson. Trial began on November 27, 2006.

       Before the court is Wilson's oral motion, made after the close of testimony this evening, asking the court to clarify and reconsider its November 24, 2006 Order regarding whether Wilson may cross-examine cooperating witness Jesse Jacobus ("Jacobus") about Jacobus's mental health. That Order provided as follows:

> It appears that three categories of mental health history are at issue: the witness's mental health during childhood, the witness's mental health at the time of the events as to which the witness will testify, and the witness's mental health at the time the witness testifies. The Second Circuit has explained that–

1

> Evidence of a witness's psychological history may be admissible when it goes to her credibility. See Fed. R. Evid. 611(b). In assessing the probative value of such evidence, the court should consider such factors as the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately.
>
> The trial court has discretion to limit such evidence if it determines that the probative value of the evidence is outweighed by its potential for unfair prejudice, confusion of the issues, or waste of time. See Fed.R.Evid. 403. Its decisions on these questions will not be overturned in the absence of an abuse of discretion.

U.S. v. Sasso, 59 F.3d 341, 347 -348 (2d Cir. 1995) (quotation marks and some citations omitted).

The court first considers the witness's history of childhood mental health problems. Because of the nature of those problems, their temporal remoteness from the events as to which the witness will testify, and the absence of any reason to believe that the witness suffered from them at the time of those events, the witness's childhood mental health problems are not relevant to this case and, if relevant, are more prejudicial than probative. The Government's motion [to preclude questioning] is therefore granted as to this witness's history of childhood mental health problems.

The court next considers the witness's mental health at the time of the events as to which the witness will testify. The parties have not provided sufficient evidence for the court to determine whether there is any basis for Wilson to inquire into the witness's mental health at that time. They are therefore ordered to inform the court by November 27, 2006 what information they have regarding the witness's mental health at the time of the events as to which he will testify. Should there be evidence that the witness suffered from mental health problems at the time of those events, this court may permit Wilson to question the witness about such problems.

Finally, the court considers the witness's mental health at the time at which the witness testifies. The Government has provided information suggesting that this witness has suffered from mental health problems since the events as to which the witness will testify. These problems may be relevant to the witness's ability to testify coherently and accurately at trial. The jury is entitled to know whether the witness's ability to do so is impaired. Wilson will therefore be permitted to

> question this witness as to mental health problems that may affect the witness at the time at which the witness testifies.

Order dated November 24, 2006 at 4-6.

### I. Records Contemporaneous to Events as to Which Jacobus Will Testify[1]

It is the court's understanding that Jacobus underwent no mental health examinations between 1999 – when his childhood examinations ended – and his 2003 incarceration. For that reason, there is no basis for the court to order the Government to provide Wilson with any records contemporaneous to the events as to which he will testify.

### II. Records Created During Jacobus's Incarceration

There is, however, a basis for the court to order the Government to provide Wilson with mental health records created after Jacobus was incarcerated. Such records may reflect on Jacobus's ability to accurately perceive the events as to which he will testify, which occurred in 2002 and 2003, and on his ability to testify coherently and accurately at trial about those events.

The court previously ordered that (1) "Should there be evidence that the witness suffered from mental health problems at the time of those events, this court may permit Wilson to question the witness about such problems," and (2) "Wilson will . . . be permitted to question this witness as to mental health problems that may affect the witness at the time at which the witness testifies." (Id. at 5-6.) So as to effectuate those orders, the court now orders the Government to provide to Wilson all records of Jacobus's mental health created after Jacobus was incarcerated.

---

[1] The court will issue a separate Memorandum and Order addressing Wilson's request for modification of its Order precluding Wilson from cross-examining Jacobus about Jacobus's mental health problems during childhood.

The court has reviewed those records and is aware that in some cases they are intermingled with medical records that do not bear on Jacobus's ability to perceive events or to testify accurately as to those events. The Government is ordered to provide intermingled records in their entirety. Wilson is ordered not to refer to any medical problems – as opposed to mental health problems – when cross-examining Jacobus.

Because of the sensitive nature of those records, defense counsel are directed not to disclose information contained in those records to Wilson unless the records are redacted as to all non-mental-health conditions and treatment. In no event shall the Defendant be provided with physical copies of such records. Should defense counsel wish to show any such records to Jacobus upon cross-examination, they must first confer with the Government and agree as to which portions of those records will be redacted. At the conclusion of Jacobus's testimony, mental health records shown to him, as redacted, shall be placed under seal. Defense counsel shall immediately return to the Government all mental health and medical records not shown to Jacobus.

### III. Conclusion

For the aforementioned reasons, Wilson's motion for clarification is GRANTED with regard to mental health records created during Jacobus's incarceration.

SO ORDERED.

Dated: November 27, 2006    /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.    NICHOLAS G. GARAUFIS
                                                             United States District Judge