UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                             **MEMORANDUM & ORDER**
      v.                                 04-CR-1016 (NGG)

RONELL WILSON,

               Defendant.
------------------------------------------------------X
GARAUFIS, District Judge.

      A jury has found Ronell Wilson ("Wilson") guilty of two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of causing death through use of a firearm, and two counts of using a firearm in furtherance of crimes of violence. These charges were based on, *inter alia*, Wilson's March 10, 2003 execution of undercover New York City Police Department Detectives Rodney Andrews and James Nemorin, whom he was attempting to rob of the $1,200 they planned to use to purchase a firearm from Wilson and his fellow members of the Stapleton Crew street gang. (See Order dated January 9, 2007 at 3-7.) The Government is seeking the death penalty against Wilson in a penalty phase that began on January 16, 2007. The Government concluded its case-in-chief on January 18, 2007. Wilson's case-in-chief will begin on January 22, 2007

      Wilson has moved the court for permission to read a statement of remorse to the jury, which will determine whether or not he is sentenced to death, without being sworn in or cross-examined. For the reasons set forth below, that motion is GRANTED in part and DENIED in part.

1

During the penalty phase, "information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under [18 U.S.C.] section 3592." 18 U.S.C. § 3593(c). Section 3592(a) lists seven mitigating factors and permits a defendant to introduce proof of "[o]ther factors in the defendant's background, record, or character or any other circumstances of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8).

Wilson intends to prove, pursuant to 18 U.S.C. § 3592(a)(8), that he "has remorse for his actions on March 10, 2003." (Wilson Ltr. to Judge Garaufis dated Dec. 1, 2006 at 2 (filed under seal).) Before the penalty phase commenced, he indicated that he intended to prove his remorse via an unsworn, un-cross-examined allocution. (Wilson Ltr. to Judge Garaufis dated Jan. 7, 2007 (filed *ex parte* and under seal) ("January 7 Letter"[1]); Wilson Br. dated Jan. 7, 2007 (filed under seal).) The Government moved this court to preclude Wilson from doing so. (Govt. Ltr. to Judge Garaufis dated Jan. 11, 2007 (filed under seal).) The court denied that motion and ruled that Wilson would be permitted to allocute[2] as to his remorse provided that he accepted and complied with certain preconditions, including that his allocution would consist of the brief statement of remorse articulated in the January 7 Letter. (Order dated Jan. 12, 2007 ("January 12

---

[1] Wilson submitted two letters dated January 7, 2007 regarding remorse. I will use the phrase "January 7 Letter" to refer to the later-submitted of the two, which contains a question-and-answer colloquy. The earlier of these two letters contained a cursory description of Wilson's intended allocution and was deemed insufficiently specific by this court.

[2] As used in this Memorandum and Order, the term "allocute" refers to a defendant orally presenting an unsworn, un-cross-examined statement to a sentencing jury before it determines his sentence.

Order") at 3.) That brief statement expressed that Wilson is sorry for the pain he has caused the families of Detectives Andrews and Nemorin.

On January 16, 2007, Wilson wrote a new letter to the court (the "January 16 Letter"). The January 16 Letter, which was handwritten by Wilson, expresses (1) that the Assistant United States Attorneys prosecuting this case are wrong to characterize Wilson as remorseless; (2) that after watching Detective Andrews' sixteen-year-old son Christian testify, Wilson feels remorse and sorrow for the families of Detectives Andrews and Nemorin; (3) that Wilson's life has been difficult; (4) that if Wilson is not sentenced to death, he will, while imprisoned[3], respect others and their belongings; and (5) that Wilson would like the opportunity to counsel children not to engage in a life of crime. Wilson has moved the court for permission to read the January 16 Letter to the jury (rather than the statement contained in the January 7 Letter) without being sworn in or cross-examined.[4] (See Wilson Ltr. to Judge Garaufis dated Jan. 19, 2007 (filed under seal).) The Government opposes Wilson's motion.

In permitting Wilson to allocute as described in the January 7 Letter, this court observed that "[i]t is not clear whether a capital defendant has a constitutional right to allocute to his remorse, and several federal courts have held that he does not." (January 12 Order at 2 (citing United States v. Purkey, 428 F.3d 738, 760-61 (8th Cir. 2005); United States v. Barnette, 211 F.3d 803, 820 (4th Cir. 2000); United States v. Hall, 152 F.3d 381, 391-98 (5th Cir. 1998)).) "In

---

[3] Wilson will receive a sentence of life imprisonment without the possibility of release if the jury does not recommend a sentence of death.

[4] Although the January 16 Letter was filed under seal, this court will refer to the contents of that letter in this Memorandum and Order. Defense counsel read a portion of the letter aloud in open court, which the court deems to be a constructive publication of the letter. In addition, the court finds it necessary to identify the components of the letter in order to decide this motion.

addition," this court observed, "the Second Circuit has held in a non-capital case that 'a defendant's right to a sentencing allocution is a matter of criminal procedure and not a constitutional right.'" (January 12 Order at 2 (citing United States v. Li, 115 F.3d 125, 132-33 (2d Cir. 1997)).)

The court does not believe that Wilson has a constitutional right to allocute to his remorse. Wilson argues such a right was recognized in Lockett v. Ohio, 438 U.S. 586 (1978). The court disagrees. In Lockett, the Supreme Court found that Ohio's death penalty statute violated rights guaranteed by the United States Constitution because it limited a sentencing judge's consideration of mitigating factors to three enumerated factors.[5] Lockett at 593-594. In finding that statute unconstitutional, the Court held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id. at 605 (footnotes omitted; emphasis in original). Lockett would be relevant to Wilson's case if the Government had argued that Wilson should not be permitted to prove his remorse at all. It has not. Instead, the Government objects to Wilson's intent to allocute, rather than to testify, in support of this mitigating factor. Lockett does not hold or suggest that Wilson has a right to allocute.

---

[5] Those factors were (1) that the victim had induced or facilitated the offense, (2) that it was unlikely the defendant would have committed the offense but for the fact that she was under duress, coercion, or strong provocation, and (3) that the offense was primarily the product of the defendant's psychosis or mental deficiency. Lockett at 593-594.

4

This court nevertheless ruled, and continues to believe, that because Fed. R. Crim. P. 32(i)(4)(A)(ii) permits both capital and non-capital defendants to allocute to a judge prior to sentencing, and because in this case it is the jury and not the judge who will determine Wilson's sentence, it would be unjust to deny Wilson's motion to allocute to the jury. (January 12 Order at 2-3.) The court based its decision to permit Wilson to allocute on his acceptance of certain preconditions, including that the allocution consist of the statement set forth in the January 7 Letter. These preconditions were necessary because this court is obligated (1) to exclude information from the penalty phase "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," 18 U.S.C. § 3593(c), and (2) to permit the Government "to rebut any information received at" the penalty phase and to provide the Government "fair opportunity to present argument as to the adequacy of the information to establish the existence of any . . . mitigating factor[.]" 18 U.S.C. § 3593(c). (Id. at 3-4.)

The court remains convinced that the allocution set forth in the January 7 Letter is appropriate. It is appropriate not because Wilson has any right to allocute – he does not – but because his own words are the best evidence he can provide on the particular issue of his remorse. Furthermore, although swearing Wilson in and subjecting him to cross-examination would be the most effective way to permit the Government "to rebut any information received" regarding remorse and to provide the Government "fair opportunity to present argument as to the adequacy of the information to establish the existence of" remorse, 18 U.S.C. § 3593(c), the court believes that the Government has other means of rebutting Wilson's purported remorse.[6]

---

[6] For example, the Government can refer the jury to song lyrics Wilson wrote shortly after executing Detectives Andrews and Nemorin, which were introduced into evidence in the trial phase of this case, in which Wilson appears to brag about his actions.

The same cannot be said of the other issues Wilson addresses in the January 16 Letter. This court cannot permit Wilson to allocute – as opposed to testifying under oath and subject to cross-examination – about (1) any arguments raised by the Assistant United States Attorneys prosecuting this case (other than their argument that Wilson lacks remorse for murdering Detectives Andrews and Nemorin); (2) the testimony of any witnesses, including members of the victims' families (who were sworn in and subject to cross-examination); (3) difficulties he encountered during his life; (4) how he will comport himself if he is imprisoned rather than sentenced to death; or (5) his purported desire to counsel children not to engage in a life of crime.[7] Wilson has myriad ways other than allocution – and other than his own sworn testimony, for that matter – to introduce information regarding these subjects.

In seeking to allocute as to these subjects, Wilson ignores the most fundamental principle underlying Lockett, which is that "th[e] qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." Lockett, 438 U.S. at 604 (citation and quotation marks omitted). While this need for reliability gives rise to a right to present all mitigating factors bearing on sentencing, including remorse, it counsels against presenting any of those factors, even remorse, via an allocution, which is an inherently unreliable medium. While it may be tempting to leave to the jury the task of deciding what portion, if any, of Wilson's allocution it should believe, the court cannot, in its role as a gatekeeper, permit the jury to consider Wilson's words regarding a variety of subjects now at issue without also

---

[7] That Wilson would seek to raise this final subject without being subject to cross-examination is troubling in light of telephone conversations he conducted while in prison, between two and five days prior to jury selection, in which he directed a nephew of his to retaliate against someone who had assaulted the nephew and directed another person to accompany the nephew and assault cohorts of the nephew's intended victim.

6

permitting the jury to hear him justify his words in response to Government cross-examination regarding those subjects. If Wilson wishes to inform the jury in his own words about the issues identified in the previous paragraph, he may do so by taking the witness stand, swearing to tell the truth, answering questions posed by his lawyers, and answering the Government's questions on cross-examination.

For the foregoing reasons, Wilson's motion is GRANTED in part and DENIED in part. Wilson may allocute as to his remorse as set forth in the January 7 Letter. He may not, however, read the January 16 Letter to the jury. If he wishes, he may submit to the court, under seal and *ex parte*, yet another statement of remorse and request permission to read the new statement as his allocution. The new statement may consist of a redacted version of the January 16 Letter, *i.e.*, a version omitting statements regarding the prohibited subjects identified by this court. Any allocution must satisfy the following preconditions:

*First*, Wilson's allocution will consist of the statement set forth in the January 7, 2007 Letter or, if a new letter is submitted and approved by this court, the statement set forth in that new letter. Any deviation from the contents of a letter approved by this court may cause the court to issue corrective instructions to the jury and any other remedy the court deems to be in the interests of justice. In particular, the court notes that it would be inappropriate for Wilson to comment on evidentiary issues in an unsworn, un-cross-examined allocution.

*Second*, the allocution must be limited to the subject of Wilson's remorse. Wilson may not address, via allocution, any arguments raised by the Assistant United States Attorneys prosecuting this case (other than their argument that Wilson lacks remorse for murdering Detectives Andrews and Nemorin); the testimony of any other witnesses in this case, including

members of the victims' families; the difficulties he may have encountered during his life; how he will comport himself if he is imprisoned rather than sentenced to death; his purported desire to counsel children not to engage in a life of crime; or any other evidentiary issues (other than his remorse).

*Third*, Wilson will read his allocution to the jury from the defense table.

*Fourth*, during the court's instructions as to the law, the court will instruct the jury (a) that it will be permitted to consider the allocution in finding whether Wilson has established the existence of remorse and (b) that it will be permitted to take into account that the allocution was unsworn and not subject to cross-examination.

*Fifth*, Wilson must provide the Government a copy of the new allocution letter, if any, at least one day before he intends to read the allocution to the jury. This will permit the court to consider any appropriate Government motion as to Wilson's allocution.

*Sixth*, Wilson must inform the Government, at least one day before reading the allocution, of the day on which he intends to do so.

Before Wilson may read his allocution to the jury, he must inform the court and the Government in writing, at least one day before he intends to read the allocution to the jury, that he accepts the aforementioned conditions.

SO ORDERED.

Dated: January 19, 2007                                  /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                                   NICHOLAS G. GARAUFIS
                                                       United States District Judge